**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

JEFFREY JOHN LOUT,

                Petitioner,

       vs.

STATE OF MONTANA, MIKE MAHONEY,
Warden, Montana State Prison,
JAMES MCDONALD, Warden, Crossroads
Correctional Center,

              Respondents.

CAUSE NO. CV 05-67-M-LBE

ORDER AND FINDINGS AND
RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE

_____

    This matter comes before the Court on a Petition for Writ of
Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is
challenging his conviction based on his 2003 guilty plea to
sexual intercourse without consent (common scheme) and sexual
intercourse without consent.  Petitioner has also filed a motion
for appointment of counsel, a motion for evidentiary hearing and

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 1

a motion seeking confirmation of transcript.  (See Dkt. #s 14, 15, and 18).

## I.  PARTIES

Petitioner Jeffrey John Lout is a state prisoner currently incarcerated at Crossroads Correctional Facility in Shelby, Montana.

The named Respondents are the State of Montana, Mike Mahoney and James MacDonald.  James MacDonald is the Warden of Crossroads Correctional Facility and the current custodian of Petitioner. As such, Warden MacDonald is the only proper respondent in this matter.  The State of Montana and Mike Mahoney are improper respondents.

## II.  FACTUAL AND PROCEDURAL HISTORY

The state district trial court described the underlying facts in this matter as follows:

> Between July, 1996 and January, 1999, Petitioner engaged in sexual relations with minor adolescent boys while acting as a Boy Scout leader and a boxing club coach.  His victims had become adults before law enforcement became aware of his crimes.
> One of his victims (Victim A) came forward to inform authorities that Mr. Lout had invited him to sleep over at Mr. Lout's residence on several occasions, during which times Victim A would awaken from sleep to find Mr. Lout fondling his genitals and performing oral sex upon him. Subsequent investigation by law enforcement led to a second victim (Victim B), who recounted similar experiences with Mr. Lout, including oral sex.  A third victim (Victim C) was located, and related that he had similar experiences with Mr. Lout during overnight stays with Mr. Lout, including awakening to find Mr. Lout performing oral

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 2

sex upon him.

    Mr. Lout had a pattern of supplying alcohol and drugs to these children, most of whom were at risk or troubled youth, and after exploiting their weaknesses and impairing their judgment, subjecting them to involuntary sexual contact, usually while they were sleeping or intoxicated.

    During the investigation of Mr. Lout, Lynnwood Gordon, a friend and confidant of Mr. Lout's, came forward to provide law enforcement with letters Mr. Lout had written him and testimony confirming Mr. Lout's sexual relationships with the identified victims, and other minor adolescent boys, as well, who knew Mr. Lout through his trusted positions as mentor and coach.

State v. Lout, Montana Twenty-First Judicial District Court, Ravalli County, Cause No. DC-02-79, Opinion and Order filed April 20, 2004.

On May 22, 2002, Petitioner was charged by Information filed in district court, Ravalli County, with three counts of sexual intercourse without consent (two by common scheme), and one count of sexual assault.  Petitioner was arrested on these charges.  On July 15, 2002, while Mr. Lout was incarcerated in the Ravalli County Detention Facility, another inmate named Justin Cloninger reported that he had awakened to find Mr. Lout performing oral sex upon him without his consent.  This led to the filing of an additional charge of sexual intercourse without consent in October 2002.

Petitioner initially plead not guilty to all charges but on January 3, 2003, he signed a negotiated plea agreement and agreed to enter a plea of guilty to one count of sexual intercourse

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 3

without consent and one count of sexual intercourse without consent (common scheme), in exchange for the dismissal of the other charges.  The agreement was an "open plea" agreement, meaning the parties could argue for any sentence and the judge could impose up to the maximum provided by law.  The plea agreement stated, "In this case, the maximum sentence is imprisonment for two (2) life terms or no more than 200 years imprisonment, plus any applicable penalty enhancement provisions and $100,000 in fines."  It also stipulated that the sentences should run concurrently with each other.  Finally, the plea agreement included the following waiver: "By pleading guilty, the Defendant waives his right to appeal or otherwise challenge his conviction by direct appeal, habeas corpus, or post-conviction relief."

Petitioner contends that his counsel presented him with the proposed plea agreement at 3:45 in the afternoon of January 3, 2003 and told him it needed to be filed by 4:00 p.m.

Five days later, the District Court held a change of plea hearing.  The district court described that hearing as follows:

> On January 8, 2003, Mr. Lout appeared before the
> Court for his change of plea hearing.  A *Second Amended
> Information* was filed, charging Mr. Lout with Sexual
> Intercourse Without Consent, a felony in violation of
> Mont. Code Ann. § 45-5-503(1); and Sexual Intercourse
> Without Consent (Common Scheme), a felony in violation
> of Mont. Code Ann. § 45-5-503(1) and (3)(a).  During
> the hearing, the Court advised Mr. Lout of the charges
> filed in the *Second Amended Information* and the

potential penalties for the charges.  Mr. Lout advised
the Court that he was prepared to proceed, and he
entered guilty pleas to the charges contained in the
*Second Amended Information.* The Court questioned Mr.
Lout's understanding of the rights he would be waiving
by entering the guilty pleas, and Mr. Lout indicated
his full understanding of his circumstances. The Court
found a factual basis for the guilty pleas, found that
they were knowingly, voluntarily, and intelligently
entered, and accepted the pleas.

On March 26, 2003, Mr. Lout and his counsel
appeared before the Court for sentencing.  Mr. Lout was
sentenced to two periods of Life Imprisonment in the
Montana State Prison with the sentences to run
concurrently, and also to run concurrently with an
unrelated sentence *(Cause* No. *DC-99-22)* Mr. Lout was
already serving at the Montana State Prison.

State v. Lout, Montana Twenty-First Judicial District Court,

Ravalli County, Cause No. DC-02-79, Opinion and Order filed April

20, 2004, pp. 4-5.

The Second Amended Information (as provided by Petitioner,

see exhibits to Dkt. # 16) describe the two charges as follows:

Charge I - SEXUAL INTERCOURSE WITHOUT CONSENT, a
Felony, in violation of Section 45-5-503(1), M.C.A.
On or (sic) July 15, 2002, in Ravalli County,
Montana, Defendant JEFFREY JOHN LOUT did knowingly
commit sexual intercourse without consent, by
performing oral sex on Justin Cloninger, so as to
knowingly arouse or gratify Defendant's sexual response
or desire, which was in violation of the above-
referenced statute.

Charge II - SEXUAL INTERCOURSE WITHOUT CONSENT
(Common Scheme), a Felony, in violation of Section 45-
5-503(1)(3)(a), M.C.A.
On or about or between July 10, 1996 and January
1, 1999, in Ravalli County, Montana, Defendant JEFFREY
JOHN LOUT did commit a common scheme of conduct
constituting sexual intercourse without consent, by
knowingly performing oral sex on Youth A, Youth B, and
Youth C to knowingly or purposely arouse or gratify

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 5

Defendant's sexual response or desire, which was in violation of the above-referenced statute.

On November 17, 2003, Petitioner filed a Petition for a Writ of Habeas Corpus with the Montana Supreme Court.  He claimed that his public defender "willingly allowed" him to sign and enter into a plea agreement that was illegal, insofar as it waived his right to appellate and collateral review, and did not confer any benefit upon him.  The Montana Supreme Court ordered that the petition be forwarded to district court for consideration as a petition for post-conviction relief.

Following a responsive pleading from the State but without conducting an evidentiary hearing, the district court denied relief on April 20, 2004.  Petitioner appealed this Order to the Montana Supreme Court.  Petitioner's appellate brief raised the following issues:  (1) whether counsel was ineffective in advising him to sign a plea agreement in which he gave up his right to appeal; (2) whether counsel was ineffective for failing to present crucial mitigating evidence to the court at sentencing; (3) whether counsel was ineffective for failing to investigate the facts of his case prior to sentencing; failing to move for a change of venue due to the prejudice of the judge, prosecutor, sheriff and investigating officers; making a motion to vacate the trial date without consulting with him and failing to motion the court for lesser charges which applied in his case;

(4) whether there was state interference with his right to effective assistance of counsel because the public defender program was underfunded; and (5) whether a motion for severance was filed but never ruled on.

The Montana Supreme Court only examined the two issues discussed by the district court: (1) whether Petitioner validly waived his right to appeal or otherwise challenge his conviction and sentence and (2) whether Petitioner's attorney afforded ineffective assistance of counsel in advising him to enter into the plea agreement.

On April 19, 2005, the Montana Supreme Court affirmed the denial of the petition for post-conviction relief.  On May 2, 2005, Petitioner filed the current action in this Court by filing a "Notice of Appeal."  The Court gave Petitioner the option of having this construed as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  On May 27, 2005, Petitioner indicated to this Court that he wanted to proceed with a petition for writ of habeas corpus and filed a brief in support of his Petition for Writ of Habeas Corpus.  (Dkt. #s 4 and 5).  On May 31, 2005, Petitioner filed a form Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. (Dkt. # 7).

## III.  PETITIONER'S ALLEGATIONS

Petitioner has stated his grounds for relief as follows:

(1) That his counsel was ineffective throughout the pre-

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 7

trial proceedings for failing to file a motion for change of venue and other appropriate motions regarding the prejudice and bias of the judge and prosecuting attorney. (See Dkt. # 4, pp. 1-4).

(2) That his counsel was ineffective by failing to explain to him the language of the plea agreement and its changes and therefore allowing Petitioner to be charged with crimes that he did not commit. (See Dkt. # 4, pp. 4-10).

(3) That his counsel was ineffective by coercing him and manipulating him into signing the plea agreement, that she failed to explain the language of the plea agreement and the consequences thereof and she did not allow him an opportunity to read the agreement.  (See Dkt. # 4, pp. 10-12).

(4) That his counsel was ineffective in failing to raise the validity of the plea-agreement with regard to the charges involving his cellmate thus allowing him to be convicted of crimes which he factually did not commit.  (See Dkt. # 4, pp. 12-15).

(5) That his counsel was ineffective for failing to object to the second amended information which charged him with two crimes which he did not commit.  (See Dkt. # 4, pp. 15-17).

(6) That the plea agreement was invalid as to the language stated in it and the issue of the mandatory minimum sentence should have been handed down.  (Dkt. # 4, pp. 18-28).

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 8

(7) That a conflict of interest existed which caused his counsel to be ineffective.  Specifically, he explains that since the State of Montana and Ravalli County failed to adequately fund the public defenders they thereby deprived him of adequate legal representation.  (Dkt. # 4, pp. 29-31).

## IV.  PRELIMINARY CONSIDERATION

Rule 4 of the 2254 Rules requires courts to examine the petition before ordering the respondent to file an answer or any other pleading.  The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  Id.  If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order." Id.

## V.  LEGAL STANDARD

This action is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Weaver v. Thompson, 197 F.3d 359, 362 (9th Cir. 1999).

AEDPA "modifies the role of federal habeas courts in reviewing" habeas petitions.  Williams v. Taylor, 529 U.S. 362, 403 (2000)(O'Connor, J., concurring).  "The Supreme Court has

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 9

said that § 2254(d)(1) imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state court decisions be given the benefit of the doubt.'" <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003)(citing <u>Lindh</u>, 521 U.S. at 333 n.7 and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002)(per curiam)).

Following the AEDPA's enactment, 28 U.S.C. § 2254(d) now reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' federal law if the state court (1) 'applies a rule that contradicts the governing law' set forth in Supreme Court case authority or (2) applies controlling law to a set of facts that are 'materially indistinguishable' from a Supreme Court decision but nevertheless reaches a different result." <u>Ortiz-Sandoval v. Clarke</u>, 323 F.3d 1165, 1169 (9th Cir. 2003)(citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003)).

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 10

"A state court's decision is an 'unreasonable application' of federal law if it is 'objectively unreasonable,' which 'requires the state court decision to be more than incorrect or erroneous.'  Thus, 'an unreasonable application is different from an incorrect one.'" Id. at 1169-1170 (citing Lockyer, 538 U.S. at 75 and Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002)).

With regard to factual issues, habeas relief can only be granted if the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).  "As to more debatable factual determinations, the care with which the state court considered the subject may be important." Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997)(en banc) cert. denied 522 U.S. 1008 (1997) overruled on other grounds by Lindh, 521 U.S. 320.  Further, AEDPA directs that factual findings of the state court be granted a presumption of correctness that can only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Jeffries, 114 F.3d at 1499-1500.

## VI.  ANALYSIS

The Court need only consider Petitioner's allegations regarding his guilty plea.  "As a general rule, a guilty plea erases claims of constitutional violation arising before the

plea." <u>United States v. Montilla</u>, 870 F.2d 549, 552 (9th Cir. 1989).  The Court finds as set forth below that Petitioner entered a valid guilty plea which was knowing, voluntary and intelligent.  Therefore, Petitioner claims raising pre-plea violations (Claims one, five, six and seven) should be dismissed based upon the valid plea waiver.

Petitioner's allegations regarding his guilty plea are all plead as ineffective assistance of counsel claims.  The United States Supreme Court has articulated a specific test for ineffective assistance of counsel claims challenging guilty pleas.  In <u>Hill v. Lockhart,</u> 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that the test for evaluating ineffective claims as set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) applies to guilty plea challenges based on ineffective assistance of counsel. <u>Hill</u>, 474 U.S. at 58, 106 S.Ct. 366.  The Court reasoned that a defendant who pleads guilty upon the advice of counsel may attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. <u>Id.</u> at 56, 106 S.Ct. 366 (citing <u>McMann v. Richardson</u>, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)).  Thus, to prevail, the Petitioner

must show that (1) counsel's representation fell below the range of competence demanded of attorneys in criminal cases, and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 58-59, 106 S.Ct. 366.

The initial inquiry is whether Petitioner's counsel's representation fell below the range of competence demanded of attorneys in criminal cases.  Petitioner alleges that his counsel failed to explain the plea agreement and its consequences to him, allowed him to plead guilty to crimes for which there was no factual basis, did not allow him to read the plea agreement, and coerced and manipulated him into signing the plea agreement.  If counsel did or failed to do all that Petitioner's contends, then those acts would likely fall below the range of competence demanded of attorneys in criminal cases.  An attorney has the obligation to advise their client of the terms of a plea agreement, insure there is a factual basis for the plea and not coerce their client into pleading guilty.  However, it is not necessary to make such a determination as Petitioner cannot survive the second Hill prong.

The second prong of Hill, 474 U.S. 52, requires the defendant to show prejudice because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect

on the judgment." Stickland, at 691.  The defendant must show

that he would not have entered a plea of guilty but for the

errors of his attorney. Hill, at 58-59, 106 S.Ct. 366.

The trial court's order on the petition for post-conviction

relief states:

> The colloquy between the Court and Mr. Lout shows that
> the Court confirmed Mr. Lout's understanding of the
> terms of the *Plea Agreement,* including the rights he
> would be waiving by entering guilty pleas, and twice
> went over the potential consequences (two consecutive
> life terms) of his entry of guilty pleas to the
> charges in the *Second Amended Information.* Later in
> the hearing, the Court asked Mr. Lout if he was
> satisfied with the advice and services he had received
> from his counsel Ms. Brownlee, and Mr. Lout responded,
> "Very satisfied."

The Montana Supreme Court correctly based its analysis on

the two-pronged Strickland test.  It reasoned that Lout had to

first demonstrate that his counsel performed deficiently or below

an objective standard of reasonableness, and, second, establish

prejudice by demonstrating that there was a reasonable

probability that, but for counsel's errors, the result of the

proceeding would have been different.  This is a correct

statement of the controlling law on point.

The Montana Supreme Court then found that Petitioner's

counsel's actions clearly fell within the wide range of

reasonable professional decisions.  They focused first on the

fact that counsel had negotiated a deal which resulted in the

State dismissing three charges against Petitioner.  Second, they

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 14

found that the District Court specifically asked Petitioner if he understood what he was pleading guilty to, that the offenses carried the possibility of life sentences, and that he was waiving his right to any appeal.  Petitioner responded that he understood this and that he was satisfied with his counsel's performance.

The Court requested a copy of the plea transcript but was informed by Respondent that the change of plea hearing had not been transcribed.  Accordingly, the Montana Supreme Court must have relied wholly upon the district court's written decision.  That decision is available from the state library website and is quoted above.

This Court cannot say that this analysis or the factual determination based solely upon the district court's opinion and order was an 'unreasonable application' of federal law.  While the Montana Supreme Court based its decision solely upon the district court's opinion and order, that was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The district court conducted the change of plea hearing and therefore was a proper source for a recitation of the change of plea hearing.

As set forth above, AEDPA directs that factual findings of the state court be granted a presumption of correctness that can only be rebutted by clear and convincing evidence.  28 U.S.C. §

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 15

2254(e)(1); <u>Jeffries</u>, 114 F.3d at 1499-1500.  Petitioner has not presented any evidence to rebut this presumption of correctness. Petitioner does not argue or allege that the district court made an incorrect factual finding with regard to the plea hearing.  He does not allege that the district court failed to advise him of the charges set forth in the second amended complaint, he does not allege that the district court failed to advise him that the potential penalty for each charge was life, he does not contend that the district court failed to advise him of the rights he would be waiving by entering his guilty pleas, and he does not allege that the district court failed to confirm his understanding of the terms of the plea agreement.

Petitioner complains repeatedly that his counsel failed to advise him properly but, even if this were true, the district court cured any problems by reviewing the charges, the penalties and Petitioner's rights with him at the change of plea hearing. Without evidence or even a contention by Petitioner to the contrary, this Court must accept the district court's rendition of the change of plea hearing.

The Court feels compelled to address separately Petitioner's second ground for relief that there was not a factual basis for his plea.  Petitioner cites from the annotations of Mont. Code Ann. § 45-5-503 when he argues that the crime of sexual intercourse without consent requires proof of "penetration of the

vulva, anus or mouth <u>of the victim</u>."(emphasis added).  Petitioner
seems to argue that since he only performed oral sex on each of
the male victims' penises he did not violate this statute.
Petitioner's argument is flawed however, in that Mont. Code Ann.
§ 45-2-101(68)(a) defines sexual intercourse as the penetration
of the vulva, anus, or mouth of <u>one person</u> by the penis of
<u>another person</u>  . . .   The wording of the statute, not the
annotator's note, governs.  Petitioner's acts do constitute
sexual intercourse without consent under the wording of the
statute.  If the annotator had correctly cited the statute,
Petitioner's argument may have some merit but based upon the
statute itself, Petitioner's argument must fail.

Accordingly, this Court finds that the Montana Supreme
Court's analysis of Petitioner's ineffective assistance of
counsel claim was not unreasonable.  As Petitioner's plea was
knowingly, voluntarily and intelligently entered, Petitioner has
effectively waived all errors alleged to have occurred prior to
entry of the plea.  <u>United States v. Lopez-Armenta</u>, 400 F.3d
1173, 1175 (9th Cir. 2005) ("[I]t is well-settled that an
unconditional guilty plea constitutes a waiver of the right to
appeal all nonjurisdictional antecedent rulings and cures all
antecedent constitutional defects." (emphasis added) (citing
<u>United States v. Floyd</u>, 108 F.3d 202, 204 (9th Cir. 1997); <u>United
States v. Cortez</u>, 973 F.2d 764, 766 (9th Cir. 1992))).

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 17

## VII.  PENDING MOTIONS

Petitioner has also requested that this Court appoint counsel to represent him in this matter and conduct an evidentiary hearing.  (Dkt. #s 14 and 15).  Petitioner contends that he has recently discovered facts of an "esoteric nature not yet raised before this court that requires the support of a properly trained person."  (Dkt. # 14, p.2; Dkt. # 15, p. 2).

The Court has authority to appoint counsel pursuant to 18 U.S.C. § 3006A whenever the interests of justice so require. Unless an evidentiary hearing is required, the decision to appoint counsel in a 28 U.S.C. § 2254 proceeding is a discretionary matter.  Terrovona v. Kincheloe, 852 F.2d 424, 429 (9th Cir. 1988).  Generally, counsel should only be appointed when the circumstances of the case indicate that such appointment is necessary to prevent a due process violation.  Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986) cert. denied 481 U.S. 1023 (1987).

The Court finds that an evidentiary hearing is not necessary in this matter.  Not only has Petitioner failed to meet the criteria set forth in 28 U.S.C. § 2254(e)(2), the Court has made a determination on the merits of Petitioner's claims and finds that an evidentiary hearing is unnecessary for making that determination.  Petitioner's reference to facts of an "esoteric nature" does not alter this Court's analysis as there is nothing

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 18

in the current record to indicate the need for a hearing or for the appointment of counsel.

Furthermore, Petitioner has failed to show probable success on the merits of his claims as set forth above.  Therefore, the Court does not find that appointment of counsel is necessary to prevent a due process violation.

Finally, Petitioner has filed a motion seeking confirmation of the Court's March 6, 2006 Order requiring Respondent to provide a copy of the change of plea hearing.  Respondent did respond to the Court's Order stating that the change of plea hearing had not been transcribed.  Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts does allow the Court to order that untranscribed recordings be transcribed and furnished to the Court.  However, the rule states that the Court can do so as part of requiring an Answer to a petition.  After determining that the change of plea hearing had not been transcribed, the Court located the district court's opinion and order from the Supreme Court of Montana's website. That opinion along with the copy of the Second Amended Information provided by Petitioner (Dkt. # 16-voluminous exhibits), has convinced the Court the transcript of the change of plea is unnecessary for this analysis.  As stated above, the Montana Supreme Court clearly relied upon the district court's opinion and order.  This Court cannot say that reliance upon the

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 19

findings of the district court which conducted the plea hearing was an unreasonable determination of the facts of this case.

Accordingly, the Court enters the following:

**ORDER**

1.   Petitioner's Motion for Appointment of Counsel (Dkt. # 14) is **DENIED.**

2.   Petitioner's Motion for Evidentiary Hearing (Dkt. # 15) is **DENIED.**

3.   Petitioner's Motion Seeking a Confirmation of Discovery (Transcripts) from this Court's March 6, 2006 Order (Dkt. # 18) is **DENIED.**

Further, the Court enters the following:

**RECOMMENDATION**

Mr. Lout's Petition for Writ of Habeas Corpus should be **DENIED.**

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

The Clerk of Court shall serve a copy of this Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636(b)(1), they the right to file written objections to this Findings and Recommendation.  Any objections to the Findings and Recommendation must be filed with the Clerk of Court within twenty (20) days after the date of this Recommendation, or

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 20

objection is waived.

**PETITIONER IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT IN A RECOMMENDATION OF DISMISSAL OF THIS CAUSE OF ACTION.**

DONE and DATED this 8th day of May, 2006.

/s/ Leif B. Erickson
Leif B. Erickson
United States Magistrate Judge

ORDER AND FINDINGS AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE / PAGE 21